Richard L. Seabolt, Esq. (SBN 67469)
**DUANE MORRIS LLP**
One Market Plaza, Suite 2200
Spear Tower
San Francisco, CA  94105-1127
Telephone:  415.957.3000
Facsimile:  415.957.3001

L. Norwood Jameson (admitted *pro hac vice*)
Matthew C. Gaudet (admitted *pro hac vice*)
**DUANE MORRIS LLP**
1180 West Peachtree Street, Suite 700
Atlanta GA  30309-3448
Telephone:  404.253.6900
Facsimile:  404.253.6901

RLSeabolt@DuaneMorris.com
WJameson@DuaneMorris.com
MCGaudet@DuaneMorris.com

Attorneys for Plaintiff,
AFFINITY LABS OF TEXAS, LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| AFFINITY LABS OF TEXAS, LLC,<br><br>       Plaintiff,<br><br>  v.<br><br>APPLE INC.,<br><br>       Defendant. | Case No.: 4:09-cv-04436-CW<br><br>**PLAINTIFF AFFINITY LABS OF TEXAS, LLC'S OPPOSITION TO DEFENDANT APPLE INC.'S MOTION FOR LEAVE TO FILE ITS FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**<br><br>Date:  March 3, 2011<br>Time:  2:00 pm<br>Judge: Hon. Claudia Wilken |

0

# TABLE OF CONTENTS

Page

SUMMARY OF OPPOSITION ...................................................................................................1

PROCEDURAL STATUS OF CASE ..........................................................................................6

ARGUMENT AND CITATION OF AUTHORITIES..................................................................7

I.      RELEVANT LEGAL STANDARDS ...............................................................7

II.     THE COURT SHOULD NOT PERMIT THE INEQUITABLE CONDUCT (AND RELATED UNCLEAN HANDS DEFENSE)...................................................10

     A.     The Court Should Not Permit The Inequitable Conduct Claim Based on The Shulhof Patent ......................................................................................... 10

          1.     Apple Was Not Diligent............................................................ 10

          2.     The Amendment Would Be Futile ............................................. 12

     B.     The Court Should Not Permit The Inequitable Conduct Claim Based on The "Icon" Theory .......................................................................................... 16

          1.     Apple Was Not Diligent............................................................ 16

          2.     The Amendment Would Be Futile ............................................. 17

     C.     Apple's Unclean Hands Claims Fall With Its Inequitable Conduct Claims......... 21

III.    THE COURT SHOULD NOT PERMIT THEM AMENDMENT REGARDING EXHAUSTION...................................................................................................21

     A.     Apple Was Not Diligent in Raising its Exhaustion Defense ............................... 21

     B.     Affinity Would Be Prejudiced By This Late Addition ........................................ 22

IV.    CONCLUSION.................................................................................................23

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*3M Co. v. Kinik Co.*, 2004 U.S. Dist. LEXIS 10882 (D. Minn. June 15, 2004)..........................21

4

*Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 989 F.Supp. 1237 (N.D. Cal.
    May 18, 2009)............................................................................................................................17

5

6

*Aircraft Technical Publishers v. Avantext, Inc.,* 2009 U.S. Dist. LEXIS 57671 (N.D. Cal. Jun.
    19, 2009) ............................................................................................................................... 7-8

7

8

*Atmel Corp. v. Authentec, Inc.,* 2008 WL 276392 (N.D. Cal. Jan. 31, 2008)............................ 8-9

9

*Bonin v. Calderon,* 59 F.3d 815 (9th Cir. 1995) ...........................................................................9

10

*Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418 (Fed. Cir. 1988).......................................1

11

*Connective Tissue, Imagineering, LLC v. Mitts,* 2007 U.S. Dist. LEXIS 62721 (N.D. Cal.
    Aug. 14, 2007 ) ...........................................................................................................................8

12

13

*Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358 (Fed. Cir. 2003) ...........................9

14

*Ethicon, Inc. v. Quigg,* 849 F.2d 1422 (Fed. Cir. 1988) .............................................................21

15

*In re Etter*, 756 F.2d 852 (Fed. Cir. 1985)(en banc)...................................................................21

16

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) ........................... Passim

17

*Foman v. Davis,* 371 U.S. 178 (1962) ...........................................................................................9

18

*In re Fritz Companies Sec. Lit.*, 282 F.Supp.2d 1105 (N.D. Cal. 2003).........................................9

19

*Herbert v. Lisle Corp.*, 99 F.3d 1109 (Fed. Cir. 1996) ..................................................................9

20

*Johnson v. Mammoth Recreations,* 975 F.2d 604 (9th Cir. 1992).................................................22

21

*Kaplan v. Rose,* 49 F.3d 1363 (9th Cir. 1994) ........................................................................7, 17

22

*Larson Mfg. Co. of S.D. v. Aluminart Prods. Ltd.*, 559 F.3d 1317 (Fed. Cir. 2009) .....................9

23

*McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 487 F.3d 897 (Fed. Cir. 2007)....................9

24

*Molins PLC v. Textron, Inc.,* 48 F.3d 1172 (Fed. Cir. 1995)..........................................................1

25

*Quanta Computer, Inc. v. LG Electronics, Inc.,* 553 U.S. 617 (2008) .........................................22

26

*Rothman v. Target,* 556 F.3d 1310 (Fed. Cir. 2009)....................................................................20

27

*Spin Master Ltd. v. Your Store Online,* 2010 U.S. Dist LEXIS 86965 (N.D. Cal. Aug. 2,
    2010) ...........................................................................................................................................8

28

ii

*Stanford v. Roche*, 2008 WL 624771, *6-7 (N.D. Cal. Mar. 4, 2008)............................................17

*Synopsys, Inc. v. Ricoh Co., Ltd.*,
    2005 U.S. Dist. LEXIS 40402 (N.D. Cal. Dec. 12, 2005)..................................................7, 10

*TALtech Ltd. v. Esquel Apparel, Inc.*, 279 Fed. Appx. 974 (Fed. Cir. 2008) ................................15

*Telemasters, Inc. v. Vintage Club Master Assoc.*, 2006 U.S. Dist. LEXIS 96438 (N.D. Cal.
    Feb. 2, 2007) ............................................................................................................................12

*Therasense, Inc. v. Becton Dickinson & Co.*, 2007 U.S. Dist. LEXIS 86410 (N.D. Cal. Nov.
    15, 2007) ............................................................................................................................. 10-11

*United States v. Univis Lens Co.*, 316 U.S. 241 (1942)................................................................22

*Use Techno Corp. v. Kenko USA, Inc.*, 2007 U.S. Dist. LEXIS 62640 (N.D. Cal. Aug. 13,
    2007) ........................................................................................................................................17

*Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316 (Fed. Cir. 2001)..........................................21

*Young v. Lumenis, Inc.*, 492 F.3d 1336 (Fed. Cir. 2007)........................................................18, 20

**Statutes**

35 U.S.C. 282.................................................................................................................................20

35 U.S.C. 307.................................................................................................................................20

**Other Authorities**

Fed. R. Civ. P. 16(b) .......................................................................................................................7

L.R. 3-2 .........................................................................................................................................10

Rule 11.........................................................................................................................................1, 8

PLAINTIFF'S OPPOSITION TO APPLE'S MOTION FOR LEAVE TO FILE       4:09-cv-04436-CW
AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Plaintiff Affinity Labs of Texas, LLC ("Affinity") submits this Opposition to Apple's Motion for Leave to File its First Amended Answer, Affirmative Defenses, and Counterclaims.

**SUMMARY OF OPPOSITION**

All of the facts relied upon by Apple to make the allegations contained in Apple's proposed Amended Answer, Affirmative Defenses, and Counterclaims (collectively, "Answer") were known to Apple long ago, and long before the October 10, 2010 deadline to amend pleadings. Apple nonetheless waited until just over a month before the extended close of fact discovery to drop these allegations into the litigation. Apple was not diligent, and Apple cannot point to any fact it recently discovered that would make any difference in the timing of these allegations. In addition, these theories are futile to the point of raising serious questions about Apple's motivations. Each set of allegations is summarized below.

<u>Inequitable Conduct / Unclean Hands.</u>  The problem with Apple's belated effort to amend is two-fold: (1) lack of diligence and (2) futility.

As to futility, Apple's allegations of inequitable conduct are categorically baseless under the law and have been specifically rejected by the Federal Circuit.[1]  By alleging inequitable conduct, Apple is claiming that Affinity intended to commit <u>fraud</u> on the Patent Office. This is the most serious accusation that can be made against an inventor or prosecuting attorney, on par with asserting that a lawyer has intentionally lied to a Court. As the Federal Circuit explained: "The habit of charging inequitable conduct in almost every major patent case has become an absolute plague." *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422, (Fed. Cir. 1988).  *See also Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1182 (Fed. Cir. 1995) ("unjustified accusations of inequitable conduct are offensive and unprofessional"). Apple bases this extraordinary accusation on two grounds:  (1) the "Schulhof patent"; and (2) the "icon" theory. Each is discussed below.

*The Schulhof Patent ("Shulhof").*  Apple alleges that Affinity inventor Russell White made a statement to the Patent Office in 2006 during the prosecution the '947 Patent-in-Suit, and that when

---

[1]     Affinity has already put Apple on notice of Affinity's intent to pursue Rule 11 remedies if this amended filing is permitted, and will move forward with the drafting of a motion and safe harbor period if necessary.  (Gaudet Decl. at ¶4).

he made that statement, he actually knew (i) that there was a prior art patent issued to somebody named Schulhof, (ii) that something specific in Schulhof was material to Mr. White's '947 Patent application, and (iii) that this specific Schulhof disclosure was not cumulative of the prior art already submitted in the '947 application.  Apple posits that Mr. White must have known this because four years earlier (in 2002), Mr. White reviewed a three-sentence description of Schulhof  that appeared in the background section of a patent application of his former employer, SBC, that he neither drafted nor prosecuted, but on which he was named as one of seven inventors.  The allegation then goes (according to Apple) that Mr. White committed fraud because some four years later he failed to disclose Schulhof – *i.e.*, he failed to disclose something he never reviewed.

These allegations reflect the very "plague" referenced by the Federal Circuit, and, moreover, the Federal Circuit has addressed and rejected an almost identical theory in *Exergen Corp. v. Wal-Mart Stores, Inc*., 575 F.3d 1312 (Fed. Cir. 2009). In *Exergen,* Federal Circuit affirmed the district court's decision not to permit the defendant to amend its pleadings to make such an allegation of inequitable conduct because such an allegation is futile for multiple reasons.  Like *Exergen*, in this case there is no allegation (and Apple has no basis to suggest) that Mr. White ever even read the Schulhof patent; instead, Mr. White was one of *seven* inventors on a different patent (from his employment at SBC) filed in 2002, in which the prosecuting attorneys of that different patent (none of which are Mr. White's or Affinity's prosecuting attorneys) included a three-sentence overview of Schulhof.

Moreover, *Exergen* requires Apple to allege specific facts to show (i) that there was a specific disclosure in Schulhof that was material to a specific claim element in the Patents-in-Suit; (ii) that Mr. White knew specifically about that particular disclosure (Apple has not done this); and (iii) none of the other art cited by Mr. White to the Patent Office contained the specific disclosure that Mr. White actually knew about (Apple certainly has not done that).  The Federal Circuit has made clear in *Exergen* that each of those allegations must be present at the pleadings stage, and that a motion to amend should otherwise be denied.  *Exergen,* 575 F.3d at 1329-1331.

As to diligence, with that substantive background in mind, it is clear that absolutely nothing in the deposition of the two prosecuting attorneys (Messrs. Rozman and Fulghum) has any bearing

1    on Apple's ability to plead inequitable conduct because Apple did not even ask the attorneys about

2    Schulhof, whether anyone had knowledge of it, whether it was material, or whether it was

3    cumulative – Apple at most had those witnesses repeat black letter patent law about general rules

4    regarding disclosure of prior art to the Patent Office and confirm that the prosecution history said

5    what it said.  Ultimately, Apple finds itself in a dilemma.  If those depositions were necessary for

6    Apple to make these allegations, then its claims must be frivolous, as Apple learned nothing new

7    from the depositions and is attempting to make its claims anyway.  More importantly, based on the

8    allegations of inequitable conduct, Apple did not bother to depose the only person alleged to know

9    anything about Schulhof  – Russell White.  On the other hand, if the depositions conveyed nothing

10   new and Apple's existing information was sufficient to support its claims, Apple has given no reason

11   for its delay.

12          *The "Icon" Theory*.  Remarkably, Apple's second inequitable conduct argument is even

13   worse.  Apple alleges inequitable conduct of the '947 Patent not based on anything that happened

14   prior to its issuance in March 2007, but instead based on Apple's interpretation of a statement made

15   six months ago by Affinity's prosecution counsel in the ongoing reexamination of one of the patents

16   that was initiated by Apple and in which Apple is participating.  Specifically, Apple alleges that

17   Affinity's infringement contentions accuse something in Apple's products of being an "icon" as

18   recited in the asserted '947 claims, but that this assertion is inconsistent with an argument made by

19   Affinity's prosecution counsel to distinguish prior art in the ongoing reexamination proceeding in

20   which Apple is participating.  (*See* Proposed Answer at ¶¶67, 69).  Even if an argument in an

21   ongoing reexamination could lead to inequitable conduct of the earlier issued patent (which it cannot

22   as a matter of law), Apple admits that it knew of the statement as of July 2010, because Apple is a

23   party to the reexamination.  Apple also admits that it was aware of Affinity's position regarding the

24   "icon" claim element in this litigation as of June 2010, when Affinity first served on Apple its

25   Infringement Contentions for this case.

26          But perhaps most remarkably, Apple must also admit that the Patent Office knows all about

27   this as well – Affinity submitted the same Infringement Contentions (which constitute the sum total

28   of the alleged inconsistency) to the Patent Office on July 26, 2010.  (*See* Proposed Answer at ¶ 72

3

(acknowledging "Mr. Rozman's filing of Affinity's Supplemental Reply with the USPTO, which included both the White Declaration **and Affinity's Infringement Contentions**.") (emphasis added)).  The significance of this cannot be understated:  the face of Apple's proposed pleading admits that the allegedly inconsistent litigation document (the Infringement Contentions) was provided to the Patent Office in the reexamination.  In other words, Apple's alleged proof that Mr. Rozman had knowledge of the <u>allegedly withheld</u> fact is that he actually <u>disclosed</u> the fact to the Patent Office; the face of Apple's pleading admits that the only piece of allegedly inconsistent litigation material was given to the Patent Office.  The law is clear that this cannot be a basis for inequitable conduct.

Moreover, there simply is no inconsistency in Affinity's positions, and no such inference can be drawn from Apple's pleading.  As explained below, Affinity's position in this litigation regarding the claim elements with the word "icon" is entirely consistent with the statements made during the reexamination.  But if Apple has a different view, Apple (unlike Affinity's litigation counsel, who is barred from the reexamination by this Court's Protective Order) can just say so in the reexamination – it is an ongoing proceeding in which Apple is participating, which makes any allegation of fraud by Affinity utterly implausible.

As to diligence, Apple again points to the depositions of two prosecuting attorneys as the reason it could not have complied with the deadline to allege inequitable conduct and unclean hands, but Apple did not even attempt to schedule those depositions until after the October 10, 2010 deadline to amend pleadings.  Even then, there is nothing in those depositions that contains any new fact relevant to this proposed amendment.  Indeed, a review of this purported necessary testimony from the prosecuting attorneys reflects that the prosecuting attorneys agreed that the prosecution history says what it says.

It is also noteworthy that Apple's recitation of the facts mentions that Apple has produced 190,000 pages, whereas Affinity produced 290,000 pages.  In reality, there is an eye popping disparity in the parties' respective document productions when the Court considers the monolithic size of Apple compared to the size of Affinity (owned and operated by two individuals).  Simply put, Apple has been grossly delinquent in its document production (effectively disregarding the revised

4

January 24th deadline for completion of document production), such that Affinity's counsel has a team of lawyers reviewing documents as Apple continues to dribble out its "rolling production," while at the same time trying to prepare for and take critical depositions. With just over a month before the close of discovery, Affinity is even having to reschedule key depositions of Apple on damages issues because even the most basic financial information has not been produced. Against this backdrop, the prejudice to Affinity of now having deal with futile amendments that serve no purpose other than to complicate discovery and this case is real.

Exhaustion. Finally, Apple also unduly delayed in bringing its exhaustion defense. Apple has been aware of Affinity's earlier litigation on the related (but different) patents and the resulting licenses with third parties for years. Apple knew all about that litigation and specifically discussed the settlements in connection with the motion practice on Apple's motion to stay, filed before the Court entered the scheduling order in this case. (Gaudet Decl., ¶13). Apple's counsel in this case (O'Melveny & Myers) represented an Apple employee as a third party witness at deposition for that case in April, 2010, and sat through the trial in that case for two weeks in October, 2010, in which the various settlement agreements were repeatedly referenced on the public record. (Gaudet Decl., ¶10). Additionally, Affinity produced to Apple the deposition transcript of Harlie Frost, President of Affinity Labs, which discussed Affinity's licensing activities in detail **and attached these licenses as exhibits**, on October 21, 2010 – over three months before this motion was filed. (*Id.* at ¶12). Two additional licenses were produced on December 10,2010, as Apple admits. Yet Apple delayed until the end of January, 2011 to raise its exhaustion defense.

Notably, Apple's exhaustion defense consists of a single sentence and provides no specific information at all that would have required Apple to analyze the actual license agreements before raising such a defense. (*See* Proposed Answer at ¶119). Apple's knowledge that parties were licensed to the entire portfolio (a fact repeatedly noted on the public record at the October trial) would have been more than sufficient. (Gaudet Decl., ¶10). In terms of prejudice from this late amendment, however, the exhaustion defense itself is a highly fact-specific inquiry that requires a complete infringement analysis for every allegedly exhausted claim by every allegedly exhausting product of each of the third party licensees as compared to the Patents-in-Suit in this case. Because

the Patents-in-Suit in this case were never asserted against any of the licensees, that is an analysis that Affinity has never undertaken.  It is far too late to commence that process now, especially as Apple has back loaded almost the entirety of its own document production to the final month of discovery.

## PROCEDURAL STATUS OF CASE

In assessing Apple's diligence (or lack thereof), the following facts are important.

- Affinity filed this lawsuit on March 24, 2009, in its home state of Texas, where its principals and all of its witnesses reside.  (D.I. 1).

- The case was transferred here on Apple's motion on August 25, 2009.  (D.I. 30).

- Apple had sufficiently investigated the Patents-in-Suit, their prosecution histories and the prior art to file reexamination requests on all of them by November 13, 2009. (See, e.g., Glasser Decl. at ¶ 14).

- The Court held a Case Management Conference on April 29, 2010.

- The deadline for the parties to add any additional claims to this case was October 10, 2010.

- Apple waited until after the October 18th and 19th the deadline to add claims in this litigation to attempt to schedule the depositions of Affinity's reexamination and prosecution counsel. (Gaudet Decl., ¶8).

- Fact discovery was originally scheduled to close on February 1, 2011, and will now close on March 11, 2011.  (Gaudet Decl., ¶3).

- Opening expert reports are dues on March 15, 2011; rebuttal reports are due April 5, 2011.  (D.I. 78).

- On January 19, 2011 Apple sent Affinity its proposed amended answer and twice demanded that Affinity let Apple know its position within 48 hours.  (Gaudet Decl., ¶4).  Affinity did so, and made clear that it opposed the amendment.  (Id.).

- On January 27, 2011, over three months after the court's deadline to add claims, Apple seeks to add multiple inequitable conduct claims and additional affirmative defenses based solely on information known to Apple for months.

- Apple did not even request a date to depose Mr. White until February 7, 2011, after it field this motion.  (Gaudet Decl., ¶9).

PLAINTIFF'S OPPOSITION TO APPLE'S MOTION FOR LEAVE TO FILE                    4:09-cv-04436-CW
AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1    In considering the issue of prejudice, there is a remarkable statement in the declaration

2    attached to Apple's motion:  Affinity (a start-up entity composed of inventor White and a business

3    manager) has produced 290,000 pages of documents; Apple (perhaps the world's largest technology

4    company) has only produced 190,000 pages of documents.  (Glasser Decl,. ¶ 5).  This is not because

5    Affinity has not requested many more documents from Apple.  Indeed, Affinity has been engaged in

6    almost daily follow-up with Apple about the need to produce documents  necessary for scheduled

7    depositions.  Instead, Apple has simply disregarded the January 24 deadline for substantial

8    completion of document production and continues to produce tens of thousands of pages of

9    documents on the eve of depositions.  (Gaudet Decl. ¶5).  This likely will lead to the postponement

10   of depositions of Apple damages witnesses because Apple has not yet produced key financial

11   documents.  Now, Apple wants to compound the complexity of this case through both futile and

12   untimely amendments to pleadings, all to extreme prejudice of Affinity.

## ARGUMENT AND CITATION OF AUTHORITIES

### I.    RELEVANT LEGAL STANDARDS

15   There are two legal standard that are dispositive here:  (1) Apple's motion for leave to amend

16   must be denied if Apple was not diligent in making these allegations; and (2) regardless of diligence,

17   Apple's motion also must be denied if the amendment would be futile.  Each is discussed below.

18   <u>Apple's Motion Must Be Denied If Apple Has Not Been Diligent</u>.  In order for Apple to

19   amend its Answer at this late stage, Apple must show "good cause" to amend the Court's Scheduling

20   Order under Fed. R. Civ. P. 16(b).  *Aircraft Technical Publishers v. Avantext, Inc.,* 2009 U.S. Dist.

21   LEXIS 57671, *4 (N.D. Cal. Jun. 19, 2009);  *Synopsys, Inc. v. Ricoh Co., Ltd.,* 2005 U.S. Dist.

22   LEXIS 40402, *10 (N.D. Cal. Dec. 12, 2005).  This standard turns on the diligence by the movant,

23   and specifically whether the movant knew of the sufficient facts earlier.  "Rule 16(b)'s 'good cause'

24   standard primarily considers the diligence of the party seeking the amendment."  *Id.* (quoting

25   *Johnson v. Mammoth Recreations,* 975 F.2d 604, 607-08 (9th Cir. 1992)); *Kaplan v. Rose,* 49 F.3d

26   1363, 1370 (9th Cir. 1994) ("Late amendments to assert new theories are not reviewed favorably

27   when the facts and the theory have been known to the party seeking amendment since the inception

28   of the cause of action.") (citation omitted).  Thus, "[w]here the party seeking amendment knows or

7

1  should know of the facts upon which the proposed amendment is based but fails to include them in

2  the original complaint, the motion to amend may be denied." *Spin Master Ltd. v. Your Store Online,*

3  2010 U.S. Dist LEXIS 86965 at *6 (N.D. Cal. Aug. 2, 2010) (citing *Jordan v. County of Los*

4  *Angeles,* 669 F.2d 1311, 1324 (N.D. Cal. 1982)).  To be clear, if the Court concludes that Apple was

5  not diligent, then the question of prejudice to Affinity is irrelevant.  Furthermore, "'[a]lthough the

6  existence or degree of prejudice to the party opposing the modification might supply additional

7  reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking

8  modification …. If the party was not diligent, the inquiry should end.'" *Aircraft Technical*

9  *Publishers v. Avantext, Inc.,* 2009 U.S. Dist. LEXIS 57671, *4 (N.D. Cal. Jun. 19, 2009) (quoting

10  *Johnson,* 975 F.2d at 607-08).[2]

11         Apple's lack of diligence and the futility of Apple's proposed amendments are sufficient

12  independent bases to deny Apple's Motion.  However, Apple's proposed Amendments would also

13  prejudice Affinity, a fact that further weighs in favor of denying Apple's motion.  *Connective Tissue*

14  *Imagineering, LLC v. Mitts,* 2007 U.S. Dist. LEXIS 62721 at *9 (N.D. Cal. Aug. 14, 2007 )

15  ("Although a finding of prejudice is not required, it can supply additional reasons to deny a

16  motion.").  Apple waited until shortly before the close of discovery to spring on Affinity new

17  allegations for which Affinity had previously not sought discovery nor considered the need for

18  expert opinions.  *Spin Master,* 2010 U.S. Dist LEXIS 86965 at *7 ("Delay can contribute to a

19  finding of prejudice, for expense, delay, and wear and tear on individuals and companies count

20  toward prejudice.") (internal quotation and citation omitted).  Apple's new inequitable conduct

21  allegations would create the need for additional analysis and preparation of defenses by Affinity, and

22  likely burdensome and costly summary judgment practice to eliminate claims which should never

23  have been brought under Rule 11 to begin with, and the proposed exhaustion defense could expand

24

25  [2]    Moreover, an amendment at the end of fact discovery on an issue about which experts often
       offer reports is by definition prejudicial.  "Prejudice typically arises where the opposing party is

26  surprised with new allegations which require more discovery or will otherwise delay resolution of
       the case."  *Atmel,* 2008 WL 276392 at*2.  *See also Spin Master,* 2010 U.S. Dist LEXIS 86965 at

27  *7 ("Delay can contribute to a finding of prejudice, for expense, delay, and wear and tear on
       individuals and companies count toward prejudice.") (internal quotation and citation omitted).

28

PLAINTIFF'S OPPOSITION TO APPLE'S MOTION FOR LEAVE TO FILE                4:09-cv-04436-CW
AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

the scope of the case exponentially. *Atmel Corp. v. Authentec, Inc.,* 2008 WL 276392, *2 (N.D. Cal. Jan. 31, 2008) ("Prejudice typically arises where the opposing party is surprised with new allegations which require more discovery or will otherwise delay resolution of the case."). The net result of Apple's actions would be to drive up the cost of litigation for Affinity and delay resolution of this case on the merits, thereby prejudicing Affinity.

    <u>Apple's Motion Must Be Denied If The Amendment Would Be Futile</u>. According to the Supreme Court, four factors are relevant to whether a motion for leave to amend should be denied: undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party. *Foman v. Davis,* 371 U.S. 178, 182 (1962). Futility alone can justify the denial of a motion to amend: "The general rule that parties are allowed to amend their pleadings does not apply to actions in which the amendment would be an exercise in futility, or in which the amended complaint would also be subject to dismissal." *In re Fritz Companies Sec. Lit*., 282 F.Supp.2d 1105, 1111 (N.D. Cal. 2003); *see also Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir. 1995).

    In assessing futility, the governing standard for inequitable conduct is that a party asserting inequitable conduct must prove by clear and convincing evidence that a patent applicant breached the duty of candor to the PTO by (1) "fail[ing] to disclose material information or submit[ting] materially false information to the PTO" with (2) "intent to mislead or deceive the examiner." *McKesson Info. Solutions, Inc. v. Bridge Med., Inc*., 487 F.3d 897, 913 (Fed. Cir. 2007). The "intent" element requires not merely the intent to take the action or omission complained of, but intent to deceive or mislead the patent examiner into granting the patent. *Dayco Prods., Inc. v. Total Containment, Inc*., 329 F.3d 1358, 1367 (Fed. Cir. 2003) ("[I]nequitable conduct requires not intent to withhold, but rather intent to deceive."). In fact, while intent may be proven through inferences, intent to deceive must be "the *single most* reasonable inference able to be drawn from the evidence…." *Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312, 1328 n.5 (Fed. Cir. 2009) (emphasis added). Thus, "[i]ntent to deceive cannot be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *Herbert v. Lisle Corp*., 99 F.3d 1109, 1116 (Fed. Cir. 1996); *see also Larson Mfg. Co. of S.D. v. Aluminart Prods.*

9

*Ltd.*, 559 F.3d 1317, 1340 (Fed. Cir. 2009) ("[N]ondisclosure, by itself, cannot satisfy the deceptive intent element.").  Apple's allegations cannot meet either part of the inequitable conduct test.

## II.   THE COURT SHOULD NOT PERMIT THE INEQUITABLE CONDUCT (AND RELATED UNCLEAN HANDS DEFENSE)

### A.   The Court Should Not Permit The Inequitable Conduct Claim Based on Shulhof

The Court should deny Apple's motion regarding the inequitable conduct allegations based on Shulhof because Apple was not diligent and because the amendment would be futile.

#### 1.   Apple Was Not Diligent

Apple was aware of all of the information used in its Inequitable Conduct allegations long before the present motion.  The file wrappers of the Patents-in-Suit were served on Apple June 11, 2010 in connection with Affinity's obligations under Patent L.R. 3-2.  Thus, Apple has long known of the statements in the '947 Patent and that Schulhof was not disclosed during prosecution of the Patents-in-Suit, and Apple has not argued that it only recently discovered Schulhof (nor that it was the result of discovery in this case).  Apple failed to raise any inequitable conduct issues until this motion, approximately seven months later.  This type of unexplained delay in bringing new claims is unacceptable. *Synopsys,* 2005 U.S. Dist. LEXIS 40402 at*10. ("The moving party must make a showing as to why they did not amend the pleadings prior to the amendment deadline.").

Contrary to Apple's assertions, the "facts" relied upon by Apple in its proposed amended Answer are not derived from anything Apple learned from the subsequent depositions of Mr. Rozman and Mr. Fulghum.  As an initial matter, these depositions could not justify Apple's delay because Apple waited until October 18th and 19th – after the deadline to amend– to even attempt to schedule the Rozman and Fulghum depositions.  (Gaudet Decl., ¶8).  *See Therasense, Inc. v. Becton Dickinson & Co.,* 2007 U.S. Dist. LEXIS 86410, *7 (N.D. Cal. Nov. 15, 2007) ("Defendants do not offer an adequate explanation for why they did not more diligently seek depositions of the inventors … before the deadline for seeking amendments.").

Apple nonetheless attempts to use Mr. Fulghum's testimony to argue that Schulhof is material to the '947 patent.  (Apple Br. p.12-13).  However, Apple never asked Mr. Fulghum about the materiality of Schulhof.  Instead, Apple asked Mr. Fulghum a generic question about whether

10

1    prior art that disclosed elements added by an amendment would have been disclosed by Mr.

2    Fulghum to the PTO:

3         Q.    And if you were aware of prior art that disclosed the elements that were being
               added by amendment to claim 40, you would have disclosed those?

4         A.    Yes.

5    (Glasser Decl., Ex. 21 at 43:13-16).  This question has nothing to do with Schulhof, and Mr.

6    Fulghum said nothing about Schulhof.

7         Similarly, Apple attempts to use Mr. Rozman's testimony as proof of the materiality of

8    Schulhof to the '926 patent.  (Apple Br. p.13).  However, Mr. Rozman simply testified generally that

9    material prior art should be disclosed to the PTO, and if a hypothetical prior art reference disclosed

10   elements added to previously rejected claims, it may have been material:

11        Q.    If some – if prior art disclosed the elements that you added to those previously
               rejected claims, would that art have been material

12             [Mr. Jameson]:  Object to Form.

13        A.    Yeah, it may – it very well may have been material.

14   (Gaudet Decl., ¶16 at 68:9-68:14).  Again, Apple neglected to ask Mr. Rozman anything about

15   Schulhof, including whether Schulhof is material.  The testimony above – that prior art that

16   disclosed new elements "may very well" have been material, depending on whether it was

17   cumulative – is simply a statement of settled law; it is not a "fact" that has anything to do with

18   Apple's allegations, and all of the facts were already known to Apple.  *Therasense,* 2007 U.S. Dist.

19   LEXIS 86410 at *9 (finding lack of diligence, noting "[m]any of the facts that Defendants claim

20   were first 'revealed' in these depositions are facts that were suggested by the 510(k) or by other

21   evidence already in Defendants' possession.").  Again, Apple cannot point to any testimony where it

22   asked Mr. Rozman if he knew anything about Schulhof, if it disclosed the newly added elements, or

23   if it was material.  And if any testimony were actually necessary before making this type of

24   allegation it would have been the testimony of the one person accused of fraud under this theory:

25   Russell White.  But Apple did not even ask for his deposition until <u>after</u> filing this motion.  (Gaudet

26   Decl., ¶9).

27        In sum, because Apple was aware of all the information necessary to draft its frivolous

28   allegations long before the deadline to amend claims, and Apple gleaned no new facts from the

1 Rozman and Fulghum depositions, Apple's Motion should be denied. *Telemasters, Inc. v. Vintage*

2 *Club Master Assoc.,* 2006 U.S. Dist. LEXIS 96438, *7 (N.D. Cal. Feb. 2, 2007) ("[B]ecause

3 Defendant was aware, or reasonably should have been aware, of this information long before the …

4 deadline to amend, Defendant had ample time prior to the deadline to file its counterclaim….").[3]

5 ## 2.    The Amendment Would Be Futile

6     The Federal Circuit has made clear that to plead inequitable conduct, there must be some

7 specific allegation that a party knew that a reference was prior art, that it was material, and hid it

8 from the Patent Office to try and deceive them. *Exergen,* 575 F.3d at 1329-1331.  The Federal

9 Circuit specifically described the futility even when faced with a more plausible allegation than

10 made by Apple:

11       The mere fact that an applicant disclosed a reference during prosecution of one
        application, but did not disclose it during prosecution of a related application, is
12      insufficient to meet the threshold level of deceptive intent required to support an
        allegation of inequitable conduct.  Indeed, SAAT's pleading does not contain specific
13      factual allegations to show that the individual who had previously cited the '998
        patent knew of the specific information that is alleged to be material to the '685
14      patent and then decided to deliberately withhold it from the relevant examiner.

15

16 *Id.* at 1330.

17     Here, Apple does not even try to allege that the '947 Patent's application is in any way

18 related to the SBC applications that referenced Schulhof.  The face of the '947 Patent (attached to

19 Affinity's Complaint) makes clear that it was filed more than two years before the SBC application.

20 And, Apple does not allege that Mr. White would have had any knowledge that Schulhof was prior

21 art to the '947 Patent – the summary description of the Schulhof patent that appears in the

22 Background section of the later-filed SBC application (quoted in Paragraphs 51 and 90 of Apple's

23 proposed amendment) never mentions Schulhof's filing date.  In other words, there is no way to

24 infer from what Apple has pled that Mr. White could read the SBC application and determine that

25

26 _____

    [3]    The fact that Apple's use of the Rozman and Fulghum depositions is a subterfuge is
27 underscored by who Apple did not depose:  Russell White, the person who allegedly committed
    the fraud.  In fact, Apple still had not even asked for a date for the deposition of Mr. White (much
28 less noticed his deposition) at the time it filed this motion.  (Gaudet Decl., ¶9).

12

PLAINTIFF'S OPPOSITION TO APPLE'S MOTION FOR LEAVE TO FILE          4:09-cv-04436-CW
AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1   Schulhof would qualify as prior art to an application filed more than two years earlier.

2          Despite these facts, Apple alleges that inventor Russell White read the three-sentence

3   description of Schulhof (quoted in Apple's Proposed Answer) and gleaned from those three

4   sentences:  (1) Schulhof's filing date (which was nowhere present); (2) that Schulhof must contain

5   some disclosure beyond what was in the three-sentence summary (*i.e.*, something else that was not

6   present in the summary description); and (3) that this additional disclosure is somehow material to

7   the '947 and '926 Patents.  And then, Apple alleges that the apparently omniscient Mr. White

8   decided that he needed (about four years later) to deceive the Patent Office about all of this.  The

9   Federal Circuit simply will not permit those types of extrapolations from the alleged fact.  *Exergen*,

10  575 F.3d at 1330 ("The pleading, however, provides no factual basis to infer that any specific

11  individual, who owed a duty of disclosure in prosecuting the '685 patent, knew of the specific

12  information in the '808 and '988 patents that is alleged to be material ….  A reference may be many

13  pages long, and its various teachings may be relevant to different applications for different

14  reasons.").

15         Moreover, Apple does not allege (because it would be false) that Mr. White drafted or

16  prosecuted the SBC patent/application.  He at most reviewed them (and not the Schulhof patent they

17  briefly mention) prior to their filing more than <u>four years</u> before the amendment in the '947

18  application that Apple contends underlies the accusation of fraud on the Patent Office.  (Proposed

19  Answer at ¶44).  Based on the allegations in the Proposed Answer, the sum total of knowledge that

20  anyone connected with Affinity would ever have had about Schulhof was that more than two years

21  after filing the '947 Patent application and four years before the relevant amendment to the '947

22  Patent, Mr. White was one of seven named inventors on a different patent application in which the

23  prosecutor included a three-sentence description of Schulhof – a description that does not include

24  Schulhof's filing date (which would have been necessary for Mr. White to even know if Schulhof

25  was prior art to the '947 Patent) or any description of anything alleged to be material to the '947

26  Patent.

27         In sum, the high-level description of Schulhof set forth in paragraphs 51 and 90 of Apple's

28  Proposed Answer – *i.e.*, the only thing that Apple can allege Mr. White actually knew about –  is not

1  alleged to be material to anything, is not on its face prior art to anything, and would unquestionably

2  be cumulative.  But again, all that the Court need note is that Apple has not (and cannot) argue that

3  the specific portions of Schulhof that Apple can allege Mr. White knew about (set forth in

4  paragraphs 51 and 90) are (i) material to a specifically identified claim element in the Patents-in-Suit

5  and (ii) not cumulative of any other art in the record.[4]  The Federal Circuit made clear in *Exergen*,

6  however, that to plead a non-futile inequitable conduct allegation, Apple would have to say exactly

7  what claim elements in the '947 and '926 Patents the material allegedly known to Mr. White (in

8  paragraphs 51 and 90) would have been material to – merely citing a general argument from the

9  prosecution history (which is exactly what the deficient pleading in *Exergen* did) is not sufficient:

10  
11      Second, the pleading fails to identify which claims, and which limitations in those
        claims, the withheld references are relevant to, and where in those references the
        material information is found--i.e., the "what" and "where" of the material omissions

12  *Id*. at 1329.  Then, Apple would at least have to allege that this specific subject matter was "non-

13  cumulative" to other art already disclosed in the prosecution of the '947 Patent, *i.e*., that nothing Mr.

14  White or Affinity already gave to the Patent Office showed the generalized description contained in

15  paragraphs 51 and 90 of Apple's Proposed Answer:

16  
17      Third, the pleading states generally that the withheld references are "material" and
        "not cumulative to the information already of record," *Answer* PP 41-42, but does not
18      identify the particular claim limitations, or combination of claim limitations, that are
        supposedly absent from the information of record.

19  *Id*. at 1329-30.  Apple does <u>not</u> (and cannot) make that allegation, because it would be simply false.

20  There could be thousands of references that show the high-level concept of "downloading digital

21  audio onto a portable storage medium," which is the only thing identified in Paragraphs 51 and 90

22  that Apple can allege Mr. White actually reviewed and had specific knowledge of (and again given

23  the passage of four years, the notion that Mr. White would somehow remember a three-sentence,

---

24      [4]    Apple itself never saw Schulhof as being relevant enough to assert it as prior art in this
25  litigation until its most recent amended invalidity contentions several weeks ago – despite Apple
    having filed an *inter partes* reexamination a year earlier after scouring the Earth for a year to find
26  the very best references.  And Apple never explains when it discovered all of the underlying
    materials here – only that it inexplicably needed irrelevant testimony from two prosecuting
27  attorneys before making the allegation – even though those attorneys neither knew about nor were
    asked about Schulhof.
28

PLAINTIFF'S OPPOSITION TO APPLE'S MOTION FOR LEAVE TO FILE        4:09-cv-04436-CW
AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1    general description of a patent is as implausible as assuming that an attorney would recall a single

2    case cite and parenthetical from a brief he reviewed four years earlier).  Thus, even if it was

3    reasonable to infer such superhuman powers of memory to Mr. White – such that this three-sentence

4    summary were retained four years later – an inventor does not need to disclose cumulative art; thus,

5    to make an inequitable conduct allegation, a defendant must be able to plead that the specific

6    disclosure allegedly known to the inventor was <u>not</u> cumulative.[5]  Apple does not and cannot make

7    that allegation about the disclosures identified in Paragraph 51.  Apple's inequitable conduct

8    allegations with respect to Schulhof are futile, and intent to deceive is certainly not "the *single most*

9    *reasonable inference able to be drawn from the evidence….*"  *Exergen,* 575 F.3d at 1328, n.5

10   (emphasis added).

11           Moreover, demonstrating the frivolous nature of this pleading (and the appropriateness of the

12   standard set forth in *Exergen*), Apple's witnesses confirmed that nobody could reasonably  be

13   expected to have the bionic-memory Apple wishes to infer for Mr. White.  For example, Apple

14   employee Emily Schubert was asked about a patent on which she is listed as one of several

15   inventors.  (Gaudet Decl. ¶17 at 175:12-24).[6]  Ms. Schubert, however, was not even aware that the

16   patent listed prior art references that were disclosed to the PTO.  (*Id*. at 176:9-20).  Not surprisingly,

17   Ms. Schubert had not reviewed any of the listed prior art references.  (*Id*. at 176:24-177:21).

18   Additionally, Ms. Schubert could not even answer questions regarding the invention disclosures

19   contained in her patent because she had not reviewed it in several years and could not remember

20   what was contained in it.  (*Id*. at 177:25-178:7; 179:12-14).  Likewise, during the deposition of

21   Apple employee Chris Wysocki, Apple's counsel illustrated why it is unreasonable for Apple to

22   claim that Mr. White should have known everything disclosed in patent applications on which he

23   was listed as a co-inventor years earlier.  When Affinity questioned Mr. Wysocki about specific

24          [5]    *See*, *e.g.*, *TALtech Ltd. v. Esquel Apparel, Inc.*, 279 Fed. Appx. 974, 977 (Fed. Cir. 2008) ("If
25   the material is cumulative to other disclosed material, as a matter of law, the inventor is not
     obligated to disclose it.").

26
        [6]    The actual testimony is being filed under seal because – although there is nothing that could
27   be confidential about that testimony – Apple has insisted that its employees' views about the
     meaning of specific terms in their patents is confidential.
28

1  language contained in the specification of a patent application on which Mr. Wysocki is listed as an

2  inventor, Apple counsel (the same attorney on the signature block of Apple's motion) objected that

3  because the patent was five years old, the witness would have to review it in its entirety before

4  answering any questions about it.  (Gaudet Decl., ¶18 at 204:9-14).  Then, when asked if he agreed

5  with the way his own patent used a particular term, Mr. Wysocki took exception with his patent

6  because he did not write it (instead, a prosecuting attorney wrote it, just like with the SBC patent).

7  (*Id.* at 209:8-210:1).

8       **B.     The Court Should Not Permit The Inequitable Conduct Claim Based on The**

9              **"Icon" Theory**

10      The Court should likewise deny Apple's motion regarding the inequitable conduct claim

11  based on the "icon" theory because Apple was not diligent and the amendment would be futile.

12              **1.     Apple Was Not Diligent**

13      As Apple must admit, Affinity's interpretation of the term "icon" in this litigation was first

14  disclosed to Apple through Affinity's original Infringement Contentions in June 2010.  (Apple Br. at

15  4, n.3).  These contentions contain all of the excerpts cited in Apple's Proposed Answer as Affinity's

16  litigation position on the "icon" element that was allegedly misrepresented to the Patent Office.  (*See*

17  Proposed Answer at ¶¶57-62).

18      The next month, in July 2010, Apple received Affinity's Response to an Office Action in the

19  reexamination proceeding in which Apple is participating.  (Glasser Decl., ¶15).  According to

20  Apple, this July 2010 Response contains an allegedly inconsistent interpretation of the "icon" claim

21  element.  Since Apple is a party to the ongoing reexamination proceedings, Apple knew about

22  Affinity's arguments to the examiner regarding the "icon" claim element as of July, 2010, when

23  Affinity's response to the Office Action in question was submitted.  Thus, Apple had knowledge of

24  all relevant facts regarding its "icon" inequitable conduct argument as of July, 2010, but delayed six

25  months before attempting to raise an inequitable conduct claim.  *Kaplan,* 49 F.3d at 1370 ("Late

26  amendments to assert new theories are not reviewed favorably when the facts and the theory have

27  been known to the party seeking amendment since the inception of the cause of action.") (internal

28  citation omitted).

PLAINTIFF'S OPPOSITION TO APPLE'S MOTION FOR LEAVE TO FILE               4:09-cv-04436-CW
AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1    Again, Apple gleaned no information from the deposition of Mr. Rozman that was not

2    already apparent from the documents in Apple's possession for months.  Mr. Rozman's deposition

3    simply reiterates facts that were already apparent from those documents, and those documents

4    presented to the Patent Office speak for themselves.  Courts in this district have enforced the case

5    management deadline to amend under this circumstance.  *See Use Techno Corp. v. Kenko USA, Inc.,*

6    2007 U.S. Dist. LEXIS 62640, *4-5 (N.D. Cal. Aug. 13, 2007) (denying leave to amend complaint to

7    add fraud claim where the deposition testimony only "confirmed and reiterated" the contents of a

8    document disclosed approximately four months earlier).[7]

9              **2.      The Amendment Would Be Futile**

10    There are three fatal flaws in this theory, each of which is so severe that it raises serious

11    questions about how Apple could have a good faith basis to allege fraud against Affinity.

12    <u>First</u>, even if there were an inconsistency (which there is not), there could never be

13    inequitable conduct relating to an alleged inconsistency with the Infringement Contentions here

14    because Apple admits in its pleading that Affinity submitted those same Infringement Contentions to

15    the Patent Office.  *Young v. Lumenis, Inc*., 492 F.3d 1336, 1349 (Fed. Cir. 2007) ("we cannot agree

16    that there was inequitable conduct resulting from the 'failure to disclose material information' when

17    that information was disclosed to the PTO in time for the examiner to consider it").  In short, it

18    would be impossible for Affinity to have misrepresented its position in this litigation to the PTO

19

20    _____

[7]    The cases cited by Apple do not support its position.  First, Apple points to *Advanced Cardiovascular*, where the defendant discovered the factual basis for its inequitable conduct claim during a deposition of the prosecuting attorney, not from the plain language of documents previously produced to the defendant.  *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc*., 989 F.Supp. 1237, 1247 (N.D. Cal. May 18, 2009) ("SciMed does not seek to assert a new legal theory arising from otherwise pleaded facts").  Thus, it was reasonable for the defendant to confirm the prosecuting attorney's testimony by deposing the inventor prior to pleading inequitable conduct.  *Id*.  Similarly, in *Stanford v. Roche*, the defendant first discovered the alleged misrepresentations to the patent examiner during discovery, after the disclosure of correspondence between the prosecuting attorney and its expert, and later explored the relevant facts through depositions of those individuals.  *Stanford*, 2008 WL 624771, *6-7 (N.D. Cal. Mar. 4, 2008).  The defendant did not have all relevant facts from the documents disclosed long before the deadline for amending, as Apple did here.  Put simply, Apple's depositions had nothing to do with corroboration.

because Affinity disclosed its infringement contentions – the document alleged by Apple to be inconsistent – to the Patent Office.

Second, based on the face of the pleading in Apple's Proposed Answer, it is clear that Affinity's statements to the Patent Office and its statements in the Infringement Contentions are perfectly consistent with each other.  Specifically, although text may be part of an icon, the claimed icons must be *selectable* such that they can, for example, initiate the playing of a media file.  This is why Apple's Proposed Answer must admit that the claims in the '947 patent refer to icons "linked" to audio files or "associated" with audio files.  (Proposed Answer at ¶56).  In other words, text can be part of an icon if the text can be selected to cause, for example, a linked audio file  to play or a user interface screen to change.  In every single example shown of the accused icons in Apple's Answer, the identified text is selectable, and the selection causes something to happen.  (Proposed Answer at ¶¶58-61).  In other words, the text is not just "shown," i.e., it is not merely a display of a currently playing song or station; instead, the text is a graphic that can be selected.  This is also why a related patent (with the same specification – U.S. Patent No. 7,634,228) has a claim that specifically recites "to present the name on the display of the portable electronic device as a selectable icon."  (Gaudet Decl., ¶15).

And that is exactly what Affinity's counsel told the Patent Office in distinguishing the prior art, as quoted by Apple at Paragraphs 67: "all that is taught with regard to those information channels is that titles of the channels, e.g. radio station call numbers, can be shown, but this does not teach or suggest the recited icon."  That statement expressly distinguishes prior art which disclosed displaying a textual description of the media being played on a device (*e.g*., titles of channels or radio station call numbers).  (Glasser Decl., Ex. 16).  In other words, an "icon" as recited in the claims is selectable to initiate the playing of an audio file, whereas the text displayed in the prior art is not selectable.  Likewise, the "icons" pointed to in Affinity's infringement contentions are more than just text; they are selectable links to an audio source.  Nor does there appear to be any debate about this meaning in the ligation – Apple has not even identified "icon" for claim construction in

this case.  (Gaudet Decl., ¶14).  Given that this is all completely consistent, an inference of intent to deceive could never be "the *single most* reasonable inference."  *Exergen,* 575 at 1328 n.5.[8]

Mr. Rozman's deposition testimony is entirely consistent with this as well.  He testified:

> Q.   And in that are you distinguishing Lee because it uses -- it discloses using the titles of channels as opposed to icons?
> A.   It looks, **in part**, that's the case.

(Gaudet Decl., ¶16 at 122:9-12).

> Q.   And in that, you are distinguishing – and you -- withdrawn.
>      You make the conclusion that Lee nowhere teaches or suggests the presence of icons because Lee discloses using titles of the channels.  Correct?
>  A.   That's correct.

(*Id.* at 122:23-123:3).  Likewise, in the question posed of Mr. Rozman in paragraph 69 of Apple's Answer, he makes clear that whether the prior art includes text is only "part of the argument" – again, the claim as recited requires the icon to be selectable, and a mere display of descriptive text that cannot be selected is not an icon as recited.

And perhaps more importantly, the Federal Circuit has rejected arguments like Apple's that inequitable conduct may arise from arguments made to the PTO to distinguish then-pending claims from the prior art:

> [T]his court recognizes that the Patent Act gives the examiner the discretion to reject or accept an applicant's arguments based on the examiner's own conclusions regarding the prosecution record ….   The examiner was free to analyze [the applicant's] conclusion based on the prior art and the nature of this predictable field.  In any event, this type of conclusory analysis betrays no intent to deceive the PTO

---

[8]   The most that can be inferred from the facts alleged by Apple is that the words used by litigation counsel in the infringement charts were not verbatim to the words used by prosecution counsel to distinguish prior art, but this is hardly surprising:  Apple insisted on a Protective Order that prohibits Affinity's litigation counsel (responsible for infringement contentions) from being involved in the reexaminations in any way.  (D.I. 70 at p.8-9).  Now Apple seeks to use any alleged daylight between any papers filed in those two proceedings (even where there is none, as is the case here) as a basis to argue that someone is trying to commit fraud on the Patent Office – after Apple intentionally walled off the litigation counsel from the reexamination counsel. But even then, what prosecution counsel said – that an con is not merely text being shown (*i.e.*, a textual descriptions of what is currently playing) is perfectly consistent with the words of the claim and with Affinity's assertions of them against Apple.

19

and obtain a patent with objectively false information.  Rather, it is an attempt to characterize the prior art in a manner favorable to the attorney's client – far from deception.  No reasonable jury could rely on Mr. Jacobson's statements as clear and convincing proof of inequitable conduct.

*Rothman v. Target,* 556 F.3d 1310, 1328-29 (Fed. Cir. 2009).  *See also Young v. Lumenis,* 492 F.3d 1336, 1348-49 (Fed. Cir. 2007) ("We therefore fail to see how the statements in the October 2005 Response, which consist of attorney argument and an interpretation of what the prior art discloses, constitute affirmative misrepresentations of material fact.").  Thus, because no misrepresentation exists, this claim is futile.  And likewise, if every time a defendant could argue that a statement in the prosecution history was inconsistent with a an infringement contention, then every "prosecution history" based claim construction argument or estoppel argument by a defendant (which occurs in almost every patent case) would also be an occasion to allege inequitable conduct.  That is simply not the law.

Third, even if Apple had made allegations sufficient to plead deceptive intent (which it certainly has not), the federal patent statute is explicit that nothing about activity in an ongoing reexamination impacts the enforceability of an issued patent; it is only after the reexamination is completed and a reexamination certificate has issued that the reexamination proceeding has an effect on the owner's patent rights.  35 U.S.C. 307 indicates that a patent is not revised by any amendment or cancellation of a claim made during reexamination until a reexamination certificate is issued.  Accordingly, the Federal Circuit has repeatedly confirmed that each claim of a patent is presumed valid under 35 U.S.C. 282 and is enforceable notwithstanding the presence of a pending reexamination proceeding. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir. 1988); *See also Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001); *In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985)(en banc).  *See also 3M Co. v. Kinik Co.*, 2004 U.S. Dist. LEXIS 10882 (D. Minn. June 15, 2004) ( "In fact, the court's discretion to stay or to proceed with litigation involving a patent in reexamination counsels that a patent remains enforceable during reexamination.") (citing *Ethicon*, 849 F.2d at 1426-27).

Indeed, the very nature of Apple's theory confirms the wisdom of the Congressional decision in this regard.  The reexamination is ongoing proceeding in which Apple is participating.

20

1    Accordingly, Apple can bring this issue to the Patent Office's attention directly (but likely will not,

2    because there is no inconsistency here at all), and the Patent Office has all of the necessary material

3    to review (since the Infringement Contentions were submitted long ago).  In the meantime, nothing

4    about that impacts the enforceability of the '947 Patent that issued over three years before any of this

5    activity in the Patent Office.

6              C.       **Apple's Unclean Hands Claims Fall With Its Inequitable Conduct Claims**

7              The Court should deny Apple's motion with respect to unclean hands because Apple's

8    unclean hands claims should fall with its inequitable conduct claims.  The unclean hands claims are

9    based on Apple's inequitable conduct allegations, and therefore should not be allowed for the same

10   reasons described above with respect to Apple's inequitable conduct claims.  Apple was not diligent

11   in raising its unclean hands claims, and there is no basis in the pleadings to argue that Affinity acted

12   inequitably or in other manner that could impact the enforceability of the Patents-in-Suit.

13   **III.    THE COURT SHOULD NOT PERMIT THE AMENDMENT REGARDING
             EXHAUSTION**

14
             A.       **Apple Was Not Diligent in Raising its Exhaustion Defense**

15

16             The only fact Apple identified that was necessary for it to raise an exhaustion defense is that

17   Affinity has at least one license with a third party who makes accessories for Apple devices, and that

18   this license covers Affinity's portfolio (including the Patents-in-Suit).  Apple has known that fact

19   long before this motion.  The litigation that led to the licenses at issue was addressed by Apple in the

20   transfer motions filed in 2009, and the fact that Affinity had entered into these licenses was

21   specifically addressed by Apple in the briefing on the motion to stay filed by Apple in March, 2010,

22   before the Case Management Order was entered in this case.  (D.I. 49).  Apple's outside counsel

23   attended that trial and were thus aware of these licenses, and several times throughout the trial the

24   parties discussed license agreements entered into by Affinity with third parties, including that they

25   covered the patents at issue in this case.  (Gaudet Decl., ¶10).  Additionally, on October 21, 2010,

26   Affinity produced to Apple the deposition transcript of Harlie Frost, President of Affinity Labs, who

27   discussed Affinity's licensing activities in detail in connection with the Eastern District of Texas

28   litigation.  (*Id.* at ¶12).  Almost every license at issue here was attached as an exhibit to that

PLAINTIFF'S OPPOSITION TO APPLE'S MOTION FOR LEAVE TO FILE                        4:09-cv-04436-CW
AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1    deposition.  (*Id.*).  Apple was thus sufficiently aware of its purported exhaustion defense long before

2    the instant motion.

3              Unlike inequitable conduct, an Exhaustion defense is not required to be pled with

4    particularity.  In fact, Apple's Exhaustion defense consists of a single sentence.  This single sentence

5    could have, indeed should have, been pled before the deadline to amend pleadings.  The only

6    feasible explanation for Apple's delay is Apple's own carelessness.  *Johnson,* 975 F.2d at 609

7    ("Carelessness is not compatible with a finding of diligence and offers no reason for a grant of

8    relief.").  Thus, Apple should not be permitted to add its Affirmative Defense of Exhaustion.

9         **B.      Affinity Would Be Prejudiced By This Late Addition**

10             To prove exhaustion, Apple must prove that each licensed product "sufficiently embod[ies]"

11   each of the asserted claims of the Patents-in-Suit.  *Quanta Computer, Inc. v. LG Electronics, Inc.,*

12   553 U.S. 617, 628 (2008).  The Supreme Court articulated the principle at issue in *Univis*: "the

13   authorized sale of an article which is capable of use only in practicing the patent is a relinquishment

14   of the patent monopoly with respect to the article sold."  *United States v. Univis Lens Co.,* 316 U.S.

15   241, 249 (1942).

16             The asserted claims of the Patents-in-Suit are generally directed to websites, client software,

17   portable devices, and sometimes including associated wireless communication systems.  (D.I. 1 at

18   Ex. A-C).  Affinity has not licensed the Patents-in-Suit to companies in those markets; instead,

19   Affinity has licensed home stereo manufacturers, car audio manufacturers, and car manufacturers.

20   (Gaudet Decl., ¶6).  Affinity has never asserted the three patents-in-Suit against any of those licensed

21   entities (the driving force in those licenses was other patents in the portfolio that were asserted

22   against the licensees).  (*Id.*).

23             Apple states that the relevant facts are somehow in Affinity's control, (Apple Br. at p.17-18)

24   but that is utterly false.  The relevant facts go to the specific details of the devices of third parties and

25   whether they practice these three Patents-in-Suit – patents that Affinity has never asserted against

26   any other party (including any of these third parties).  Even the discovery and depositions Affinity

27   took on the other patents that Affinity did assert against those licensees is of no use because (per D.I.

28   92), those depositions are not admissible here.  Moreover, most of the licenses were entered <u>before</u>

                                               22

1   fact discovery in those cases, (i.e., Alpine, Clarion, Panasonic, Fujitsu Ten, Pioneer).  (Gaudet Decl.,

2   ¶7).  Although this defense is futile (because these claims are directed at the types of products

3   offered by Apple), Affinity would not be able to mount a response until it sees exactly how Apple

4   would be arguing this theory, and all of that should have occurred long ago.

5   **IV.     CONCLUSION**

6           For the foregoing reasons, Affinity respectfully requests that the Court Deny Apple's Motion

7   for Leave to File its First Amended Answer, Affirmative Defenses, and Counterclaims.

8

9   Dated: February 10, 2011                              **DUANE MORRIS LLP**

10                                            By:_____/s/ Matthew C. Gaudet_____
                                                     Matthew C. Gaudet
11
                                                  Richard L. Seabolt (S.B. # 67469)
12                                                RLSeabolt@DuaneMorris.com
                                                  **DUANE MORRIS LLP**
13                                                Spear Tower, One Market Plaza, Suite 2200
                                                  San Francisco, CA  94105-1127
14                                                Telephone: 415.957.3000
                                                  Facsimile:  415.957.3001
15

16                                                L. Norwood Jameson (admitted *pro hac vice*)
                                                  WJameson@DuaneMorris.com
17                                                Matthew C. Gaudet (admitted *pro hac vice*)
                                                  MCGaudet@DuaneMorris.com
18                                                David C. Dotson (admitted *pro hac vice*)
                                                  DCDotson@DuaneMorris.com
19                                                **DUANE MORRIS LLP**
                                                  1180 West Peachtree Street, Suite 700
20                                                Atlanta, GA  30309-3448
                                                  Telephone: 404.253.6900
21                                                Facsimile: 404.253.6901
22

23                                                Thomas W. Sankey (admitted *pro hac vice*)
                                                  TWSankey@DuaneMorris.com
24                                                Jordan T. Fowles (admitted *pro hac vice*)
                                                  JTFowles@DuaneMorris.com
25                                                **DUANE MORRIS LLP**
                                                  3200 Southwest Freeway, Suite 3150
26                                                Houston, TX 77027-7534
                                                  Telephone: 713.402.3900
27                                                Brian McQuillen (admitted *pro hac vice*)
28

                                                  23

1                              BMQuillen@DuaneMorris.com

2                              **DUANE MORRIS LLP**

3                              1540 Broadway
New York, NY  10036-4086

4                              Telephone: 212.692.1000
Facsimile: 212-692-1020

5

6                              Attorneys for Plaintiff,
AFFINITY LABS OF TEXAS, LLC

PLAINTIFF'S OPPOSITION TO APPLE'S MOTION FOR LEAVE TO FILE       4:09-cv-04436-CW
AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS